**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
:
DEON WILLIAMS,                    :
                                  :   Civil Action No. 07-971 (WJM)
            Petitioner,           :
                                  :
     v.                           :   **O P I N I O N**
                                  :
KAREN BALICKI, et al.,            :
                                  :
            Respondents.          :
_____

**APPEARANCES:**

Deon Williams, Pro Se            Susan B. Gyss
SPN- 402394/950154B              Hudson Co. Prosecutor's Off.
South Woods State Prison         595 Newark Avenue
215 Burlington Road South        Jersey City, NJ 07306
Bridgeton, NJ 08302              Attorney for Respondents

**MARTINI**, District Judge

Petitioner Deon Williams, a prisoner currently confined at the South Woods State Prison in Bridgeton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondents are Administrator Karen Balicki and the New Jersey Attorney General.

For the reasons stated herein, the Petition must be denied.

**BACKGROUND**

**A.   Factual Background**

As stated in the opinion of the Superior Court of New Jersey, Appellate Division:[1]

> Early on the morning of June 23, 1999, Luis Pereira advised the Newark Police Department that his burgundy 1987 Chevrolet Minivan had been stolen overnight from a street near his home.  That evening James Pierce left a Jersey City restaurant at about 9:00 p.m. when a burgundy minivan stopped near him and three men got out.  A man later identified as defendant Deon L. Williams walked up to Pierce, holding a gun to his side and said, "Run it."  Pierce surrendered a gold chain from around his neck and about $300.  As he was being robbed, he saw a man he later identified as Daketrick Leaks patting down another person's pockets.  A third man later identified as Shamallis Neal was acting as a lookout.  All three men re-entered the minivan and drove away.
>
> Pierce spoke briefly with the other robbery victim and then went home.  He testified that while at first he was not going to report the robbery, he changed his mind.  About a half-hour passed when Pierce arrived at a local police station to report the robbery.  He told police the two robbers were dressed entirely in black and that the one that robbed him had dreads in his hair and something wrapped around his head like a scarf.  He said the lookout was "light-skinned and chubby."
>
> Before Pierce arrived at the police station, other witnesses has alerted police to the incident and described the vehicle involved as a burgundy van with license plate number WG701WA, the same license plate which was on Luis Pereira's stolen 1987 Chevrolet

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

>    minivan.  Shortly thereafter, Jersey City Police
>    Officer Daniel Sears was on routine patrol in his
>    marked police car when he saw the burgundy van.  After
>    verifying it was a stolen vehicle, Sears began to
>    follow it.  The van accelerated, and Sears activated
>    his overhead lights and siren while in pursuit.  The
>    van drove at high speeds through several red lights,
>    and almost struck a pedestrian.  It finally spun out of
>    control and crashed into a concrete road divider.
>    After four men ran from the van, Sears and backup
>    officers pursued on foot.  When the officers came to an
>    embankment, they heard a shot and briefly took cover.
>    Eventually they found and arrested four men: Williams,
>    Leaks, Neal and Michael Bryant.  A loaded automatic
>    .380 handgun was later located near the concrete
>    divider where the van had crashed.
>
>    All four suspects were transported to the police
>    station and brought individually into a room where they
>    were viewed by Pierce through a one-way mirror.  He
>    identified Williams as the person who robbed him, Leaks
>    as the person he saw robbing the other man, and Neal as
>    the lookout.  He was unable to identify Bryant.

(Opinion of the Superior Court of New Jersey, Appellate Division

("Appellate Division"), Respondents' Appendix ("Ra") 141-144).

**B.   Procedural History**

On October 20, 1999, a Hudson County grand jury indicted

Petitioner and his co-defendants on an eight-count indictment,

including charges for: armed robbery, in violation of N.J.S.A.

2C:15-1 (Count I); conspiracy to commit armed robbery, in

violation of N.J.S.A. 2C:15-1 and 2C:5-2 (Count II); possession

of a weapon for an unlawful purpose, in violation of N.J.S.A.

2C:39:4(a) (Count III); unlawful possession of a weapon, in

violation of N.J.S.A. 2C:39-5(b) (Count IV); eluding police, in

violation of N.J.S.A. 2C:29-2(b) (Count V); receipt of stolen

property, in violation of N.J.S.A. 2C:20-7 (Count VI); attempt to commit murder, in violation of N.J.S.A. 2C:5-1 and 2C:11-3 (Count VII); and resisting arrest, in violation of N.J.S.A. 2C:29-2(a) (Count VIII).

A pretrial hearing on the suggestiveness of the identification procedures used by the police was heard on May 12, 2000. On June 8, 2000, the judge found the identification procedures were not "unduly suggestive."

Petitioner and Leaks were tried together before a jury from October 30 through November 3, 2000. At the end of the State's case, the judge dismissed Count VII (attempted murder). Petitioner was found guilty of the remaining charges on November 3, 2000.

On January 23, 2001, Petitioner was sentenced to 20 years incarceration with 85% parole ineligibility, subject to the No Early Release Act ("NERA"), N.J.S.A. 2C:43-7.2, on the armed robbery charge, a consecutive 10-year sentence for the eluding conviction, and concurrent 5-year sentences for the remaining charges.

Petitioner appealed the conviction and sentence. The appeal was consolidated with Leaks' appeal, and was denied by the Appellate Division on October 20, 2003. The New Jersey Supreme Court denied certification on January 21, 2004.

4

On March 22, 2004, Petitioner filed a state petition for post-conviction relief ("PCR"). On January 27, 2005, a hearing was held and the PCR court denied relief by written letter opinion and order on February 22, 2005, without an evidentiary hearing. The Appellate Division affirmed the denial of relief on October 3, 2006 and the New Jersey Supreme Court denied certification on December 8, 2006.

Petitioner filed this habeas petition on March 1, 2007. On April 16, 2007, Petitioner was advised of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000). An Order to Answer was issued and Respondents filed a Response to the Petition on June 26, 2007. Petitioner filed a Traverse on July 23, 2007.

Petitioner asserts the following two claims in this habeas petition, which were also raised on direct appeal:

> Ground One: Petitioner's right to Due Process was violated by the trial court's failure to submit the applicability of the "No Early Release Act" to the jury.

> Ground Two: The admission of the tainted out-of-court identification of defendant violates defendant's Due Process rights.

(Petition, ¶ 12). It appears that the claims have been exhausted in the state courts. Nonetheless, this Court finds that Petitioner's claims are clearly meritless. Thus, the petition will be denied.[2]

---

[2] Although a petition for writ of habeas corpus may not be granted if Petitioner has failed to exhaust his remedies in state

**DISCUSSION**

**A.      Standards Governing Petitioner's Claims.**

Section 2254 of Title 28, United States Code, provides that the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus.  The statute reads as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

---

court, a petition may be denied on the merits notwithstanding Petitioner's failure to exhaust his state court remedies.  See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

6

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court explained the application of § 2254(d)(1). The Court analyzed subsection 1 as two clauses: the "contrary to" clause and the "unreasonable application" clause. The Court held that under the "contrary to" clause, "a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. A federal court may grant the writ under the "unreasonable application" clause, if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. Habeas relief may not be granted under the "unreasonable application" clause unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief. See id. at

7

411; see also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir.), cert. denied, Matteo v. Brennan, 528 U.S. 824 (1999). Thus, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent. See Werts, 228 F.3d at 197; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

With regard to 28 U.S.C. § 2254(d)(2), a federal court must confine its examination to evidence in the record. See Abu-Jamal v. Horn, 2001 WL 1609690 at *12 (E.D. Pa. December 18, 2001). In addition, the state court record should be reviewed to assess the reasonableness of the state court's factual determinations. See id. Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court." Id.; see also 28 U.S.C. § 2254(e)(1). The Court of Appeals for the Third Circuit has ruled that this presumption of correctness can be overcome only by clear and convincing evidence. See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001)(citing 28 U.S.C. § 2254(e)(1)). "A finding that is well-supported and subject to the presumption of correctness is not unreasonable." Abu-Jamal, 2001 WL 1609690 at *12 (citing Duncan, 156 F.3d at 198).

8

Furthermore, federal habeas courts ordinarily refrain from revisiting credibility determinations as "it would be wholly inappropriate for a federal court to repastinate soil already thoroughly plowed and delve into the veracity of the witnesses on habeas review." Sanna v. Dipaolo, 265 F.3d 1, 10 (1st Cir. 2001). A habeas petitioner therefore "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

**B.   Petitioner's NERA Claim**

The No Early Release Act ("NERA"), N.J.S.A. 2C:43-7.2, "require[d] that one convicted of a first or second degree 'violent crime' [was] ineligible for parole release until he or she . . . served eighty-five percent of the sentence imposed for that crime." State v. Griffith, 336 N.J. Super. 514, 515 (App.

Div. 2001).  A "violent crime" was defined as one "in which the actor causes . . . serious bodily injury . . . or uses or threatens the immediate use of a deadly weapon."  N.J.S.A. 2C:43-7.2(d).  Effective June 29, 2001, NERA was amended to list the specific offenses to which it applied; however, Petitioner was sentenced prior to this amendment.

Petitioner argues that under State v. Johnson, 166 N.J. 523, 543 (2001), in order to sentence him under NERA, "the 'violent crime' condition must be submitted to a jury and found beyond a reasonable doubt."  The New Jersey Supreme Court found that to construe NERA otherwise would subject the statute to a constitutional challenge under Apprendi v. New Jersey, 530 U.S. 466 (2000).  See Johnson, 166 N.J. at 543-44.

Petitioner was sentenced prior to the Johnson decision. Nonetheless, trial counsel argued in a sentencing memorandum that the NERA factor should be submitted to the jury; however, the sentencing judge ruled otherwise, finding that Apprendi was limited to the facts of that particular case.  As the Appellate Division explained:

> Defendants further argue that the "violent crime" predicate of the then-governing NERA statute had to be determined beyond a reasonable doubt by a jury. However, in State v. Johnson, our Supreme Court held that a NERA sentence could be imposed on an armed robbery conviction since the jury verdict necessarily incorporated the violent crime predicate required for a NERA sentence at that time.

10

> Defendants assert <u>Johnson</u> is factually distinguishable because the State's evidence was that the gun was not pointed at Pierce but rather held by Williams at his side. We find that this is a distinction without a difference under the facts of this case. Pierce testified that Williams came face-to-face to him and demanded, "Run it." The gun was in Williams' hand and clearly in Pierce's view. Williams repeated his demand and began emptying Pierce's pockets while still holding the gun. The only conceivable conclusion consistent with the jury verdict is that Williams threatened Pierce with the weapon in the process of robbing him. Accordingly, the requisite "violent crime" predicate was found by the jury, and the defendants were properly sentenced under NERA.

(Appellate Division Opinion, Ra 157-158 (internal citations omitted)).

In <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 471, 490 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), the Supreme Court overturned a sentence imposed under Washington state's sentencing system, explaining that "the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." 542 U.S. 296, 302 (2004)(internal quotations omitted). Most recently, in <u>United States v. Booker</u>, 543 U.S. 220 (2005), the Supreme Court applied the rule of <u>Apprendi</u> to the

11

United States Sentencing Guidelines, holding that the Guidelines are not mandatory, but are merely advisory.

In this case, it does not appear that the trial court violated the rule of Apprendi / Blakely.  Under federal law, the Supreme Court has held that judicial fact-finding in support of a sentencing judge's discretion to sentence within a statutory range does not violate the constitution.  See Booker, 543 U.S. at 233; Blakely, 542 U.S. at 308-09.  In this case, the trial court did not sentence Petitioner beyond the statutory maximum in violation of Apprendi and Blakely –- the judge issued an 85% parole disqualifier.

Furthermore, a federal court's ability to review state sentences is limited to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies."  See Grecco v. O'Lone, 661 F. Supp. 408, 415 (D.N.J. 1987) (citation omitted).  Thus, a challenge to a state court's discretion at sentencing is not reviewable in a federal habeas proceeding unless it violates a separate federal constitutional limitation.  See Pringle v. Court of Common Pleas, 744 F.2d 297, 300 (3d Cir. 1984).  See also 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990).  For example, in Gryger v. Burke, 334 U.S. 728, 731 (1948), the Supreme Court rejected Petitioner's due process challenge to a life sentence

imposed by the Pennsylvania courts. Petitioner argued that the sentencing judge mistakenly regarded as mandatory a sentence which was discretionary. The Supreme Court held:

> We are not at liberty to conjecture that the trial court acted under an interpretation of the state law different from that which we might adopt and then set up our own interpretation as a basis for declaring that due process has been denied. We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question.

Id. at 731.

Here, Petitioner claims solely an error of state law, which is not amenable to correction in a federal habeas corpus proceeding. See 28 U.S.C. § 2254(a). Moreover, to the extent this Court has jurisdiction to entertain this issue, it is clear that the sentence imposed comported with state law. See N.J.S.A. 2C:43-7.2(d)(4). Petitioner is not entitled to relief on this claim.

**C.    Petitioner's Identification Claim**

Petitioner argues that the show-up identification by Pierce was not reliable, and that the trial court erred in ruling admissible the out-of-court identification.

For background purposes, the Court notes that Petitioner was subject to a "show-up" identification, in which a suspect is apprehended promptly after a crime and brought to the victim for identification. Show-up identifications allow identifications

while the witness' memory is fresh; further, the suspect has the same appearance as at the time of the crime, and suspects who are not positively identified may be released immediately. See Green v. City of Paterson, 971 F. Supp. 891, 904 (D.N.J. 1997) (citations omitted). Although a show-up identification generally is considered more suggestive than a line-up, see Stovall v. Denno, 388 U.S. 293, 302 (1967), overruled on other grounds, Griffith v. Kentucky, 479 U.S. 314 (1987), a number of Circuit Courts of Appeals, including the Court of Appeals for the Third Circuit, have held show-up identifications admissible.

> Immediate show-ups can serve ... important interests. For example, show-ups allow identification before the suspect has altered his appearance and while the witness' memory is fresh. ... In our view, such considerations will justify a show-up in a limited number of circumstances, such as where the police apprehend a person immediately after the crime and in close proximity to the scene.

United States v. Funches, 84 F.3d 249, 254 (7th Cir. 1996) (citations omitted). See also U.S. v. Watson, 76 F.3d 4, 6 (1st Cir.), cert. denied, 517 U.S. 1239 (1996); Johnson v. Dugger, 817 F.2d 726, 729 (11th Cir. 1987); United States v. Gaines, 450 F.2d 186, 197 (3d Cir. 1971) (holding that a show-up conducted without counsel was justified by "the fact that the eye-witness might have quickly departed, and the considerations of reliability inhering in an immediate identification"), cert. denied, 405 U.S. 927 (1972).

Even if an identification procedure is suggestive, an identification may still be reliable. See Green, 971 F. Supp. At 904 (citing Neil v. Biggers, 409 U.S. 188, 199 (1972))(other citation omitted). An identification becomes unreliable "when that suggestibility in confrontation reaches impermissible or unfair limits." Id. (citation omitted).

A two-prong test is utilized to determine the trial admissibility of an eyewitness identification. First, a court must decide whether the procedure in question was, in fact, impermissibly suggestive. If it is so determined, the court must decide whether the suggestive procedure resulted in a substantial likelihood of misidentification. See Stovall v. Denno, 388 U.S. 293 (1967), overruled on other grounds, Griffith v. Kentucky, 479 U.S. 314 (1987); Simmons v. United States, 390 U.S. 377 (1968); Neil v. Biggers, 409 U.S. 188 (1972); Manson v. Braithwaite, 432 U.S. 98 (1977). Due Process is not violated if "a suggestive and unnecessary identification procedure . . . possesses sufficient aspects of reliability," as reliability is the "linchpin in determining the admissibility of identification testimony." Id. (citing Manson, 432 U.S. at 106).

In United States v. Mathis, the Court of Appeals for the Third Circuit stated that:

> [The] likelihood of misidentification should be measured by a totality of circumstances including: the witness's initial opportunity to view the suspect at the crime scene and degree of attention at that time,

15

>     the witness's level of certainty in the disputed
>     identification, the length of time between initial
>     viewing and disputed identification, and the accuracy
>     of any intervening description of the suspect occurring
>     between those two events.

Mathis, 264 F.3d 321, 330 (3d Cir. 2001), cert. denied, 535 U.S. 908 (2002)(citing Biggers, 409 U.S. at 199-200). New Jersey adopted the Biggers and Manson standards in State v. Madison, 109 N.J. 223 (1988).

In the case at bar, the Appellate Division reviewed this claim and, citing the appropriate federal cases, found:

>     . . . A Wade hearing was conducted prior to trial at
>     which only Detective Charles Sutaris testified. He
>     said that while he was interviewing Pierce at police
>     headquarters, he overheard a radio transmission that
>     Jersey City police units were pursuing a red van stolen
>     out of Newark and involved an armed robbery. There was
>     no indication that Pierce heard the transmission or, if
>     he did so, connected it to his own robbery. Sutaris
>     testified that the four suspects were led by a police
>     officer one at a time in front of the one-way mirror
>     for viewing by Pierce. He said it was very possible
>     that they were handcuffed.
>
>     Judge Callahan found that the identifications by
>     Pierce were admissible under the following two-prong
>     test of State v. Madison:
>
> >     To determine the admissibility of
> >     eyewitness' identification, the court must
> >     first decide whether the pretrial
> >     identification procedure was impermissibly
> >     suggestive and, if it was, the court must
> >     then decide whether the objectionable
> >     procedure resulted in a very substantial
> >     likelihood of irreparable misidentification;
> >     if the court finds the identification is
> >     reliable despite the impermissibly suggestive
> >     nature of the procedure, the identification
> >     may be admitted into evidence.

16

Case 2:07-cv-00971-WJM   Document 11   Filed 12/14/07   Page 17 of 18 PageID: 96

> A defendant bears the burden of establishing by a preponderance of the credible evidence that the out-of-court procedure was so suggestive that is resulted in a substantial likelihood of misidentification. Where the "taint" is found, the State must respond with "clear and convincing evidence" that the subsequent in-court identification was based on the witness' observations of defendant at the time of the criminal event and was not a product of the improperly suggestive out-of-court identification procedure.
>
> A "show-up," such as in the case at bar, is not of itself unduly suggestive investigative procedure. In fact, it has been held that confrontation immediately after a crime promotes fairness to the accused since the mental image of the victim is still fresh. While there was some suggestibility in this identification procedure, the issue of reliability must be considered under the totality of the circumstances . . .
>
> * * *
>
> Pierce was robbed at gunpoint with his assailant only a foot or so away, and streetlights and storefront lights illuminated the scene. Therefore, he had ample opportunity and ability to see the person robbing him and others involved. His identifications at the police station were made about an hour after the incident, and he expressed no uncertainty. We agree with Judge Callahan that there were sufficient indications of reliability for admissibility of the identifications. The strength of Pierce's testimony was a matter for the jury.

(Appellate Division Opinion, Ra 147-150, citing Neil v. Biggers, 409 U.S. 188, 198 (1972); Stovall v. Denno, 388 U.S. 293, 301-02 (1967), Manson v. Brathwaite, 432 U.S. 98, 114 (1977); State v. Madison, 109 N.J. 223, 239-40 (1988) (other internal citations omitted).

Thus, the Appellate Division correctly identified Neil v. Biggers as a relevant precedent and applied the factors

17

enumerated in <u>Manson</u> to determine the reliability of the challenged identifications. The conclusion of the Appellate Division that the out-of-court identification was properly admitted, did not "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Accordingly, this ground for a writ of habeas corpus will be denied.

## **CONCLUSION**

For the foregoing reasons, the Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, is denied. The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253.

An appropriate Order accompanies this Opinion.

s/William J. Martini

WILLIAM J. MARTINI
United States District Judge

Dated: 12/14/07